Milligan, J.,
delivered the opinion of the Court.
Rainey Warren, a free person of color, was indicted in the Circuit Court of Dyer County, for the murder of a child under three years old, the son of her former owner. The indictment charges, that the murder was perpetrated by drowning. The jury acquitted the prisoner of murder in the first degree; but found her guilty of murder in the second degree, and fixed the time of her confinement in the Penitentiary for the period of twenty-one "years. Motions for a new trial, and in arrest of judgment were made and overruled, and an appeal, in error, prosecuted to this Court.
*132 Tbe judgment of the Circuit Court must be reversed, for more than one reason. It has seldom been our fortune to meet with a record, involving the life or liberty of a human being, so replete with errors, which the most ordinary attention to the plainest principles of the law would have corrected. They are at once shocking to the moral sense of the community in which they occur, and tend to break down the confidence of the people in the judgments of the courts of justice. We are not authorized to say, from any thing appearing in this record, nor do we for one moment believe, that the Circuit Judge, before whom this case was tried, committed any intentional error, or was moved, by improper motives. ’ But it is apparent, that he allowed his own judgment and feelings to take the place of the law he sat to administer, and tried the prisoner upon arbitrary rules, unknown to the Statutes of the State, or the principles of the common law.
The conduct of the Circuit Judge is so anomalous, in this case, that we feel called upon, in kindness, to rebuke it. The law, as it exists, must be administered. It knows no sympathy, or yields to no consequences. And, however great the individual hardships, it, in special cases, imposes, it is far better that they be borne, than that the rule itself be broken down. The safety of the State is lodged in the courts of justice, and the happiness of the people secured by the faithful and impartial administration of the law as it is written, and declared by the courts of justice. And a departure, under any pretense, whatever, from this rule, ends in anarchy and ruin.
*133 The times, we know, are unfriendly to a just and satisfactory administration of the law; and no judicial tribunal can hope to meet and accurately determine, all the grave questions that are daily thrust upon it. The questions frequently, are novel, and often of the first impression, and without precedent; and it would be too much to suppose that any Court could, at all times, in its judicial determination, be free from error. Much more should a reasonable charity be extended to the inferior tribunals, whose decisions are often made, necessarily, in haste, and without the opportunity of consulting authorities. But in this case, there is, at least as to one of the errors complained of, but little apology. The Statute itself, (Code, sec. 4602,) is so plain, that it is difficult to conceive how, with even ordinary attention, the Court could have gone astray.
It provides that, “Every person convicted of murder in the second degree, shall be imprisoned in the Penitentiary for not less than ten, or more than twenty years.”
The jury found the prisoner guilty of murder in the second degree, and fixed her confinement in the Penitentiary for “twenty-one years.” A motion in arrest of judgment, was made, and overruled by the Court, and the prisoner sentenced in accordance Avith the finding of the jury. This is error too palpable to be excused upon any other grounds, than sheer negligence to ascertain the plain mandates of the law.
The instructions of the Court to the jury, are no less obnoxious to the charge of a total disregard of the requirements of laAV, than his action in overruling the motion in arrest of judgment.
*134 The presiding Judge told the jury, “The defendant cannot be found guilty of murder in the first degree, under the proof. The deceased was a child — a mere infant— under three years old; and to make out the crime of murder in the first degree, there must be a premeditated, deliberate, and malicious killing, and the malice must exist in the mind of the person against the deceased. Now, the malice in this case is absent — the prisoner, if she did the killing, had she malice against this little harmless child? If she had malice, was it not against the mother of the deceased, or some other person ? This, then, was not murder in the first degree.”
The Court then proceeded to tell the jury, after showing them, from the facts, that there was a clear possibility of the prisoner’s innocence, that the killing, although “not murder in the first degree, was, nevertheless, murder; and that humanity would dictate, that the prisoner should be found guilty of the lesser crime.”
He then closes his charge with this remarkable language: “I would not be satisfied with a verdict of murder in the first degree, nor would I be satisfied with any thing less than a verdict of murder in the second degree. If I were on the jury, I would bring in a verdict of murder in the second degree.”
The language of the charge, however it may indicate the kindness of heart that dictated it, certainly is, in a judicial forum, unprecedented. It assumes to answer the whole charge against the prisoner, and at once to decide the case. It is a usurpation of the province of the jury, and an abuse of the power of the Court. By the Constitution of the State, Art. VI, Sec. 9, it is de- *135 dared, that “Judges shall not charge jurors with respect to matters of fact, but may state the testimony, and declare the law.”
This is a wise provision, and was placed in the fundamental law, to guard and protect the right of trial by jury, and the Courts of the country cannot transcend it, or disregard its sacred provisions/
But in the case under consideration, His Honor, the Circuit Judge, not only, arguendo, assumes the prisoner is not guilty of murder in the first degree, but that she is guilty of murder in the second degree, and that he will be satisfied with no other verdict. Such language is highly improper, and when incorporated into a charge of a Court to the jury, constitutes the grossest error, for which this Court is bound to reverse.
But, it is little less glaring than the one which immediately precedes it in the charge. Malice, it is true, as stated by the Court, is an essential element in the crime of murder, either at common law or by the Statute; but it does not necessarily follow, that it should always exist towards the person slain. It may be express or implied. Express malice is where one, with a sedate and deliberate mind, and formed design, kills another; which formed design is evidenced by external circumstances discovering the inward intention — as lying in wait, antecedent mena-aces, former grudges, and concerted schemes to do him some bodily harm: Wharton Cr. Law, 360. Malice is implied, when the act is committed deliberately, and is likely to be attended with dangerous consequences. In such cases, the malice requisite to constitute murder, will *136 be presumed; for tbe law implies that tbe natural or probable effect of an act deliberately done, is intended by its actors: Wharton’s Cr. Law, 359. It is not, therefore, necessarily confined to an intention to take the life of the deceased; but it includes an intention to do any unlawful act, which may probably result in depriving the party of life.' “It is not,” in the language of Blackstone, “so properly spite or malevolence to the individual in particular as an evil design in general, tbe dictates of a wicked, and depraved and malignant heart, and it may be either express, or implied in law:” 4 Bl. Com., 199, 200.
“If an act, unlawful in itself, be done deliberately and with an intention of mischief, or great bodily harm, to particulars, or mischief indiscriminately, fall where it may, and death ensues, against or beside the original in-intent of the party, it will be murder. But if such mischievous intention do not appear, (which is matter of fact, to be collected from the circumstances,) and the act was done heedlessly and incautiously, it will be manslaughter only:” Foster, 261. But if death ensue in the performance of a lawful act, it may amount, either to murder, or manslaughter, or misadventure, according to the circumstances by which it is accompanied: Ibid, 262; Hale, 472; 4 Bl. Com., 192; and Ams vs. the State, 11 Hum., 159.
These general principles are applicable to cases of murder arising under the common law. Our Statute divides murder into two classes — murder in the first degree, and murder in the second degree. The former is *137 distinguishable from the latter, by its having been perpetrated by means of poison, lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, burglary, or larceny. All other kinds of murder, are, by Statute, declared to be murder in the second degree.
Applying these general principles to the case under consideration, it is clear, that the charge in relation to the malice necessary to constitute murder in the first degree, was erroneous; but the prisoner having been acquitted of that degree of the crime, she cannot, even though she was acquitted under an erroneous charge, be convicted, on a second trial, for any offense of a higher grade than murder in the second degree.
We forbear all comment on the facts, as the case must undergo another investigation, when the law will be correctly charged, and the jury left free to pass upon the facts.
The judgment will be reversed, and a new trial awarded.